**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JASON KENNEDY and MARLENE FONSECA-SILVA, ADMINISTRATORS OF THE ESTATE OF JASON FONSECA-KENNEDY, Plaintiffs, | : | |
| v. | : | 3:24-CV-1279 (SFR) |
| NATIONWIDE GENERAL INSURANCE COMPANY and INCLINE CASUALTY COMPANY, Defendants. | : | |

**MEMORANDUM & ORDER**

Jason Kennedy-Fonseca passed away in 2022 after being severely injured in a car accident with an uninsured driver. Kennedy-Fonseca's parents—Plaintiffs Jason Kennedy and Marlene Fonseca-Silva—assert claims in their capacities as the co-administrators of the Kennedy-Fonseca estate under Connecticut law for uninsured and underinsured motorist coverage under policies issued by Defendants Nationwide General Insurance Company ("Nationwide") and Incline Casualty Company ("Incline"). Defendants have separately moved for summary judgment on all claims. For the reasons explained below, Nationwide's Motion for Summary Judgment is DENIED and Incline's Motion for Summary Judgment is GRANTED.

# I. BACKGROUND

## A. Factual Background

These facts are drawn from the parties' Local Rule 56 statements,[1] as well as the underlying evidentiary record.[2] These facts are uncontested unless otherwise stated.

### 1. Relevant Individuals and Business Entities

Jason Kennedy and Marlene Fonseca-Silva are the parents of Jason Kennedy-Fonseca. Am. Compl. ¶ 8, ECF No. 43. Kennedy and Fonseca-Silva are the co-administrators of the Kennedy-Fonseca estate. *Id.*

Broadband Media, LLC ("Broadband Media") installs telecommunication equipment in homes in Connecticut. Colon Dep. 5, ECF No. 56-2. William Colon is the sole owner and member of Broadband Media. Nationwide L.R. 56(a)2 St. ¶ 7. Broadband Media is a subcontractor for Prince Telecom, LLC ("Prince Telecom"), which contracts with national telecommunication companies. Colon Dep. 9, ECF No. 56-2.

Kennedy-Fonseca began working at Broadband Media in July 2021. Nationwide L.R. 56(a)2 St. ¶ 8. Fonseca-Kennedy was also the owner/member of Jay's Transport, LLC ("Jay's Transport"). Incline L.R. 56(a)2 St. ¶ 10.

[1] Defendants each submitted Local Rule 56(a)1 statements. Nationwide L.R. 56(a)1 St., ECF No. 57; Incline L.R. 56(a)1 St., ECF No. 58-2. Plaintiffs submitted a Local Rule 56(a)2 statement in response to Nationwide's statement. Nationwide L.R. 56(a)2 St., ECF No. 72. And they submitted a Local Rule 56(a)2 statement in response to Incline's statement. Incline L.R. 56(a)2 St., ECF No. 79. Where Plaintiffs admit a fact in Defendants' Local Rule 56(a)1 statements, I cite only to the Local Rule 56(a)2 statement in support of that fact.

[2] Citations are to the pagination set by ECF rather than to any internal page numbers appearing within the parties' briefs or exhibits.

### 2. The Accident

Kennedy-Fonseca's personal car experienced transmission issues soon after Kennedy-Fonseca began to work for Broadband Media. Nationwide L.R. 56(a)2 St. ¶ 12. As a result, Colon agreed to provide Kennedy-Fonseca with a vehicle. *Id.* Broadband Media ultimately leased a Ford Ranger from Prince Telecom. *Id.* ¶ 14.

On August 18, 2022, Fonseca-Kennedy was driving the Ford Ranger in Stamford, Connecticut. Incline L.R. 56(a)2 St. ¶ 1. Fonseca-Kennedy was working for Broadband Media at the time of the accident. *Id.* ¶ 6. Fonseca-Kennedy was struck on the driver's side by a Honda Civic driven by Jamar Blackburn. *Id.* ¶ 2. Kennedy-Fonseca passed away as a result of the accident on August 22, 2022. *Id.* ¶ 3. The Honda driven by Blackburn was uninsured. *Id.* ¶ 4.

### 3. Relevant Policies

This section identifies only the various policies and agreements that the parties say governed their relationships. I describe the operative provisions of these policies in the discussion section below.

Nationwide issued Commercial Auto Policy ACP BA013220151782 to Broadband Media. Nationwide Pol., ECF No. 56-1.[3]

Broadband Media leased the Ford Ranger from Prince Telecom according to the terms of a Vehicle and Equipment Lease Agreement dated February 24, 2021. Lease Ag., ECF No. 71-5.

---

[3] Plaintiffs object to the authenticity of the certificate attached to Nationwide's exhibit. Nationwide L.R. 56(a)2 St. ¶ 16. As I explain below, the policy is a business record that is properly authenticated pursuant to Fed. R. Evid. 902(11). Plaintiffs also challenge whether the version of the policy attached to Nationwide's moving papers has been modified in any meaningful respect since the accident. *See id.* But Plaintiffs do not object to construing the liability provisions of the policy on the current record. Tr. 25, ECF No. 101.

Jay's Transport—the LLC owned by Jason Kennedy-Fonseca—owned a 2014 Freightliner Tractor. Incline L.R. 56(a)2 St. ¶ 11. The Freightliner was leased to a Pennsylvania corporation. *Id.*. Jay's Transport obtained a certificate of coverage for liability and UM/UIM coverage from Mid-South Trucking Group, Inc. ("Mid-South"). *Id.* ¶ 12. Mid-South in turn subscribed to Policy Number ICC-N3955-410145 issued by Incline. *Id.* ¶ 14.

Incline's policy with Mid-South is dated January 24, 2022. Incline Pol., ECF No. 58-10. The certificate of coverage issued by Mid-South to Jay's Transport is dated February 1, 2022. Jay's Cov. Cert., ECF No. 58-6. And on January 31, 2022, Kennedy-Fonseca executed an Authorization Agreement that permitted Mid-South's agent to make monthly automatic withdrawals from his Wells Fargo bank account. Auth. Ag., ECF No. 58-7.

**4. Jay's Transport's Performance Under the Incline Policy**

Mid-South's agent made withdrawals from Kennedy-Fonseca's bank account from February to June 2022 without issue. Incline's L.R. 56(a)2 ¶ 21. But the bank account did not have sufficient funds to cover the July 2022 payment. *Id.* ¶ 22. In a letter dated July 15, 2022, Mid-South's agent informed Jay's Transport that the July 2022 payment had not been successful. *Id.* ¶ 23. The letter closed by stating: "Should the automatic payment be returned a second time, your coverage will be cancelled in accordance with the terms of our agreement at the end of this month." ECF No. 58-8.

On August 2, 2022, Mid-South's agent sent the following email to Kennedy-Fonseca:

> Your insurance premiums are currently past due. To insure [*sic*] your coverage is not cancelled for non-payment of premium please call our office before the last day of the month to arrangement [*sic*] payment. We thank you for your business and please remember to Drive Safely!

ECF No. 78-13.

Mid-South's agent sent another letter to Kennedy-Fonseca dated August 8, 2022. ECF No. 58-9. The letter referenced the Incline policy, which provided a certificate of coverage for the 2014 Freightliner. *Id.* The letter stated: "All coverage on the above described equipment and driver(s) is terminated on the effective date shown." *Id.* The letter stated that coverage was terminated effective August 1, 2022. *Id.*

### B. Procedural History

Plaintiffs initiated this action in August 2024. ECF No. 1. The operative pleading is the Amended Complaint filed January 22, 2025. Am. Compl., ECF No. 43. Defendants timely filed Amended Answers. ECF Nos. 42 & 44.

After discovery, Incline and Nationwide each moved for summary judgment.[4] Nationwide's Mot. for Summ. J., ECF No. 55; Mem. in Supp. ("Nationwide's Mem."), ECF No. 56. Incline Mot. for Summ. J., ECF No. 58; Mem. in Supp. ("Incline's Mem."), ECF No. 58-1. Plaintiffs responded in opposition. Pls.' Nationwide Mem., ECF No. 71. Pls.' Incline Mem., ECF No. 78. Defendants replied in support of their motions. Nationwide's Reply, ECF No. 76; Incline's Reply, ECF No. 80. I heard argument on Defendants' motions on August 4, 2026. ECF No. 101 ("Tr.").

## II. <u>LEGAL STANDARD</u>

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

---

[4] Liberty Mutual Fire Insurance Company was also named in the Amended Complaint but reached a settlement with Plaintiffs in October 2025. ECF No. 75.

opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proven at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam); *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

## III. DISCUSSION

The Amended Complaint asserts four claims: Count One submits that Nationwide is liable for uninsured motorist coverage; Count Two contends that Nationwide is liable for underinsured motorist coverage; Counts Three and Four assert the same claims against Incline. *See generally* Am. Compl. The parties do not differentiate in their briefing between these various causes of action or identify any differences between underinsured / uninsured motorist ("UM/UIM") coverage that is relevant to the present dispute, so I analyze these claims collectively. *See Toni v. Progressive Direct Ins. Co.*, 356 A.3d 437, 438 n.2 (Conn. App. 2026) (analyzing claims of uninsured and underinsured coverage jointly).

At issue here are two different policies issued by Nationwide and Incline. At bottom, Nationwide and Incline each contend that Kennedy-Fonseca was not driving a "covered auto" for the purposes of each policy. I take up each argument in turn.

### A. Nationwide's Motion for Summary Judgment

As noted, Kennedy-Fonseca worked as an independent contractor for Broadband Media. Broadband Media purchased an insurance policy from Nationwide, which offered UM/UIM coverage for vehicles owned by Broadband Media. Because Kennedy-Fonseca was

driving a car that was leased but not owned by Broadband Media, Nationwide contends that Kennedy-Fonseca is not entitled to UM/UIM coverage. Nationwide's Mem. 7.

Plaintiffs raise several arguments in response. First, Plaintiffs argue that Nationwide has failed to establish through competent evidence which aspects of the policy were in effect at the time of the accident. Pl.'s Nationwide Mem. 8. Second, Plaintiffs say that summary judgment should be denied because of purported ambiguities in the definition of "insured" for purposes of UM/UIM coverage. *Id.* at 10. Third, Plaintiffs argue that construing the UM/UIM coverage more narrowly than the policy's liability provisions violates Connecticut public policy. *Id.* at 14-20. Although I am not persuaded by Plaintiffs' first two arguments, I conclude that Connecticut public policy requires I deny Nationwide's motion for summary judgment.

**1. Relevant Policy Documents**

Nationwide contends that the version of the policy issued to Broadband Media that it attaches to its moving papers is the version of the policy that existed at the time of the accident on August 18, 2022. Nationwide's Mem. 3. In support, Nationwide's opening brief cites to an affidavit that does not appear within the record. *Id.*; Pls.' Nationwide Mem. 6-8. Nationwide concedes that this reference was in error. Nationwide's Reply 2.[5] Plaintiffs contend that Nationwide failed to lay an adequate foundation for the court to consider the terms of the relevant policy, but Nationwide responds that the policy is properly authenticated pursuant to Fed. R. Evid. 902(11). Nationwide's Reply 1-2.

---

[5] Nationwide's memorandum cites to the Affidavit of Prashant Chahwala, which the memorandum describes as "Exhibit A." Nationwide's Mem. 3. Exhibit A does not appear within the record, nor is there an affidavit from anyone named Prashant Chahwala within Nationwide's moving papers. It may be that counsel intended to refer to Nicholas Dimopoulos's Affidavit of Counsel in Support of Nationwide's Motion for Summary Judgment, ECF No. 56-3.

The Nationwide policy falls within the business-records exception to hearsay described in Fed. R. Evid. 803(6). And the record is self-authenticating—which is to say, admissible without an affidavit from an attorney—because, consistent with Rule 902(11), Nationwide's policy is accompanied by a certification from its custodian of records. Nationwide Pol. 2; *see, e.g.*, *United States v. Conde*, 134 F.4th 82, 87-88 (2d Cir. 2025) (describing the interaction between Rules 803 and 902).

However, the certification from the custodian of records does not resolve whether language in the policy attached to the certification has been changed since the date of the accident.[6] As Plaintiffs observe, Pls.' Nationwide Mem. 6-8, the Nationwide policy includes at least two references to changes that were made in October 2022. *See* Nationwide Pol. 30, 46. At argument, Nationwide posited that any post-accident changes to the Nationwide policy "are not material and irrelevant to the uninsured and underinsured coverage" question raised by its motion. Tr. 7. But Nationwide was not able to point to any evidence in the record—such as in the form of a declaration from a records custodian—that would confirm what materials were included within the policy at the time of the accident. *See id.* Nonetheless, Plaintiffs do not object to my reviewing the liability provisions of the policy as they appear within Nationwide's moving papers. Tr. 25. In other words, Plaintiffs agree that those liability

---

[6] The certification from Nationwide's records custodian is dated August 1, 2023. Nationwide Pol. 2. The records custodian states, "based upon information and belief," that "this attached copy of APC BA013220151782 effective 05-05-2022 TO 05-05-2023 issued [to] BROADBAND MEDIA LLC was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities." *Id.* I cannot determine from this certification whether there were any meaningful changes in the policy between the date of the accident (August 18, 2022) and the date of the certification (August 1, 2023).

provisions were in effect on the date of the accident. I therefore proceed to analyze the UM/UIM and liability portions of the policy.

### 2. Relevant Policy Provisions

I summarize the relevant provisions of the Nationwide policy below.

The Named Insured under the Nationwide policy is Broadband Media, LLC. Nationwide Pol. 18. The UM/UIM section of the policy defines an "insured" as follows:

> B. Who Is An Insured
>
> If the Named Insured is designated in the Declarations as:
>
> . . .
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>>
>> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

*Id.* at 61.

In contrast, the liability section of the policy defines an "insured" as follows:

> The following are "insureds":
>
> a. You for any covered "auto".[7]
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
>> (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

---

[7] The Nationwide policy states that the policy's references to "you" should be understood to "refer to the Named Insured shown in the Declarations." Nationwide Pol. 49.

> (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>
> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>
> (4) Another other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
>
> (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

*Id.* at 50-51.

Under a section captioned "Schedule of Coverages and Covered Autos," the policy states:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section of the Business Auto or Motor Carrier Coverage Form next to the name of the coverage.

Nationwide Pol. 96. The Nationwide Policy includes only the symbol "6" next to the section defining Covered Autos for Uninsured Motorists and Underinsured Motorists coverage. *Id.* at 19. The section titled "Schedule of Covered Autos You Own" lists only two vehicles: a 2012 Mini Cooper and a 2016 Nissan Frontier. *Id.* at 23. The Ford Ranger does not appear within this section. The section defining Covered Autos for Liability purposes includes the symbols "7", "8," and "9." *Id.* at 19. The Nationwide policy shows that Broadband Media paid premiums for leased vehicles. *Id.* at 24.

In the section captioned "Business Auto Coverage Form," the symbols 6, 7, 8, and 9 are defined as follows:

| | | |
|---|---|---|
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

*Id.* at 49.

### 3. UM/UIM Coverage Under the Nationwide Policy

Nationwide argues the Nationwide policy did not provide UM/UIM coverage to autos that were leased by a limited liability corporation. Nationwide's Mem. 7. Because it is undisputed that Broadband Media leased the Ford Ranger and the Ford Ranger does not appear within the schedule of vehicles owned by the policyholder, Nationwide says it is entitled to summary judgment. *Id.*

Plaintiffs respond that "a layperson policyholder would reasonably expect that if a person is covered for liability purposes, that person is also covered for uninsured motorist coverage." Pls.' Nationwide Mem. 11. In support, Plaintiffs point to the deposition testimony

of William Colon, who appears to have subjectively believed that the Nationwide policy would afford UM/UIM coverage for the Ford Ranger. Colon Dep. 18, ECF No. 71-6. Plaintiffs also observe that a Nissan Frontier appears within the schedule of "Covered Autos You Own," but that Colon testified that he leased that vehicle. Pls.' Incline Mem. 12 (citing Colon Dep. 19, ECF No. 71-6).

The parties agree that the Nationwide policy is governed by Connecticut law. Tr. 20. "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." *Hansen v. Ohio Cas. Ins. Co.*, 687 A.2d 1262, 1264 (Conn. 1996). "A contract is interpreted by the intent of the parties expressed in the language of the agreement." *Sparveri v. Town of Rocky Hill*, 656 F. Supp. 2d 297, 308 (D. Conn. 2009) (citation modified). "When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *O'Brien v. United States Fidelity & Guaranty Co.*, 669 A.2d 1221, 1224 (Conn. 1996). "If the contract is unambiguous, its interpretation and application is a question of law for the court, permitting the court to resolve a breach of contract claim on summary judgment if there is no genuine dispute of material fact." *Salce v. Wolczek*, 104 A.3d 694, 698 (Conn. 2014) (citation modified). "A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Yellow Book Sales & Distribution Co. v. Valle*, 84 A.3d 1196, 1201 (Conn. 2014) (citation modified).

Applying these principles, I conclude that by limiting UM/UIM coverage to "'autos' you own," the Nationwide policy unambiguously excluded from UM/UIM coverage the Ford Ranger leased by Broadband Media and driven by Kennedy-Fonseca at the time of the accident. Although it seems from his deposition testimony that Colon may have understood that the Nationwide policy offered UM/UIM coverage for vehicles that he leased, *see* Colon Dep. 18, ECF No. 71-6, I cannot "look to the parties' subjective intentions when interpreting a contract." *Salce*, 104 A.3d at 705.

**4. Public Policy**

Plaintiffs maintain that Connecticut public policy does not authorize Nationwide to withhold UM/UIM coverage under these circumstances. Pls.' Nationwide Mem. 13-20. I agree.

Connecticut law requires all drivers to carry automobile liability insurance coverage. Conn. Gen. Stat. § 38a-335(a). "The legislature understood that some motorists will not comply with this law, however. Thus, to protect properly insured motorists from the negligence of financially irresponsible motorists, our state law expressly provides that every automobile insurance policy must provide its insured with a minimum amount of uninsured and underinsured motorist coverage." *Tannone v. Amica Mut. Ins. Co.*, 189 A.3d 99, 104 (Conn. 2018). Section 38a-336 provides as follows:

> Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage . . . for the *protection of persons insured thereunder* who are legally entitled to recover damages because of bodily injury, including death resulting therefrom, from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles . . . .

Conn. Gen. Stat. § 38a-336(a)(1)(A) (emphasis added). State regulations provide as follows:

> The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies.

Conn. Agencies Regs. § 38a-334-6(a).

Section 38a-336(a)(1)(A) does not define "persons insured thereunder." *See id.* But the Connecticut Supreme Court has held that "'persons insured' in this statute refer to persons specified as insureds in the liability portion of the policy." *Middlesex Ins. Co. v. Quinn*, 622 A.2d 572, 575 (Conn. 1993). Connecticut public policy would be violated if "the insurance policy specifically were to limit underinsured motorist coverage in such a way as 'to preclude persons who would otherwise qualify as insureds for liability purposes.'" *Gormbard v. Zurich Ins. Co.*, 904 A.2d 198, 206 (Conn. 2006) (quoting *Quinn*, 622 A.2d at 575). "Thus, by its terms, § 38a-336(a)(1) requires that each automobile liability policy provide uninsured and underinsured motorist coverage to a class of persons that is coextensive with that insured under the liability section of the policy." *Curley v. Phoenix Ins. Co.*, 299 A.3d 1133, 1149 (Conn. App. 2023); *accord Platcow v. Yasuda Fire & Marine Ins. Co. of Am.*, 755 A.2d 356, 361 n.16 (Conn. App. 2000) ("It is undisputed that, in this state, mandatory uninsured motorist coverage operates in parity with liability insurance coverage.").

Plaintiffs contend that Kennedy-Fonseca was entitled to liability coverage under the Nationwide policy while operating the Ford Ranger. Pls.' Nationwide Mem. 16 n.22. I agree. The liability portion of the policy defines "insureds" to include "[a]nyone else while using

with your permission a covered 'auto' you own, hire or borrow." *Id.* at 50.[8] The record makes clear that Kennedy-Fonseca used the Ford Ranger with the permission of Broadband Media. *See, e.g.*, Colon Dep. 12-13, ECF No. 56-2 ("[Kennedy-Fonseca] asked if he could get into a truck until he got the vehicle fixed. It's a common practice. I said absolutely. I reached out to Prince, signed an agreement to get an additional vehicle in.").

The Nationwide policy's Commercial Auto Schedule lists the symbols 7, 8, and 9 next to liability coverage. Nationwide Pol. 19. The symbol 8 defines covered autos as "'autos' you lease, hire, rent or borrow." *Id.* at 49. The parties agree that Broadband Media leased the Ford Ranger. Nationwide L.R. 56(a)(2) St. ¶ 14. Thus, the Ford Ranger was a covered auto under the liability policy. I therefore conclude that the Nationwide policy would have afforded liability coverage to Kennedy-Fonseca while operating the Ford Ranger with the permission of Broadband Media.

Although Nationwide did not address the import of Conn. Gen. Stat. § 38a-336 in its briefing, at argument Nationwide's counsel properly conceded that these provisions of the Nationwide policy would entitle Kennedy-Fonseca to liability coverage while operating the Ford Ranger with the permission of Broadband Media. Tr. 15.[9] Nationwide nonetheless presented two reasons it believes that Connecticut public policy does not require UM/UIM coverage here. First, Nationwide argues that Broadband Media made a "plain and

---

[8] The definition has various exceptions not applicable here.

[9] Nationwide posited that the extent of liability coverage might depend on the ordering or priority of coverage that might be available under another policy. Tr. 15. But Nationwide did not dispute the premise that, based on the terms of the policy and the record I may construe on summary judgment, liability coverage would exist for Kennedy-Fonseca in the Ford Ranger under the Nationwide policy.

unambiguous" decision to obtain UM/UIM coverage only for the vehicles it owned. Tr. 16. I agree that the Nationwide policy unambiguously purported to preclude UM/UIM coverage for vehicles not owned by the Named Insured. But Connecticut law does not authorize such a restriction because insurers cannot circumvent the legislature's demand that UM/UIM coverage be coextensive with liability coverage. *See Quinn*, 622 A.2d at 576 ("The public policy behind uninsured motorist coverage, therefore, requires an insurer to provide uninsured motorist benefits to any insured under the automobile liability policy."); *Tannone*, 189 A.3d at 105 ("Insurance companies are powerless to restrict the broad coverage mandated by the statute."); *Toni*, 356 A.3d at 445 n.11 ("Insofar as the terms of the Progressive policy are narrower than what is mandated by law, the broader coverage required by law controls.").

Second, Nationwide contends that Kennedy-Fonseca is not entitled to UM/UIM coverage because he was an independent contractor rather than an employee of Broadband. Tr. 16-17. Nationwide points to evidence in the record that Kennedy-Fonseca agreed to reimburse Broadband Media for the costs of renting the 2014 Ford Ranger from Prince Telecom. *Id.* at 18-19; Colon Dep. 11-12, ECF No. 56-2. Yet Nationwide has conceded that liability coverage exists notwithstanding the fact that Kennedy-Fonseca may have reimbursed Broadband for at least some of the cost of the vehicle. Nationwide does not point to any provision in its policy that would operate differently were I to assume that Kennedy-Fonseca reimbursed Broadband for all of the costs of renting the vehicle from Prince Telecom. In short, neither argument persuades me that Connecticut public policy tolerates restricting UM/UIM coverage in the manner proposed by Nationwide.

I have found that the plain terms of the Nationwide policy did not offer UM/UIM coverage to Kennedy-Fonseca. But because I conclude as a matter of law that Kennedy-

Fonseca would have been entitled to liability coverage under the Nationwide policy, I cannot conclude that Nationwide may withhold UM/UIM coverage under these circumstances. *See, e.g.*, *Curley*, 299 A.3d at 1153-55 (concluding that UM/UIM coverage could not be withheld from plaintiff employee of the named insured because plaintiff would have been entitled to liability coverage for the rental vehicle she was occupying at time of accident); *Hadlock v. Selective Ins. Co.*, No. NNHCV186083894, 2021 WL 931229, at *4-5 (Conn. Super. Ct. Feb. 10, 2021) (concluding that plaintiff was entitled to UM/UIM coverage because he was injured while driving vehicle that was a "covered auto" for purposes of employer's liability policy); *Bailey v. Peerless Ins. Co.*, No. AANCV0850085155S, 2009 WL 3839069, at *4 (Conn. Super. Ct. Sept. 15, 2009) (concluding that UM/UIM coverage was available under employer's policy because plaintiff would have been entitled to liability coverage while driving rental car). Nationwide's motion for summary judgment is therefore denied. *See Quinn*, 622 A.2d at 575.[10]

**B. Incline's Motion for Summary Judgment**

Incline issued a policy to Mid-South, which in turn issued a certificate of coverage to Jay's Transport, which was an LLC owned by Kennedy-Fonseca. Incline L.R. 56(a)2 St. ¶¶ 10-12, 14. Plaintiffs argue that Kennedy-Fonseca was entitled to UM/UIM coverage through the Incline policy.

[10] Plaintiffs have not moved for summary judgment, so I do not decide from the current record whether the Nationwide policy requires UM/UIM coverage. *See* Tr. 32 (stating that Plaintiffs would move for summary judgment only after I ruled on Defendants' motions). Instead, I conclude that Nationwide has failed to establish as a matter of law that it can withhold UM/UIM coverage under these circumstances. *See Curley*, 299 A.3d at 1155.

Incline argues it is entitled to summary judgment for two independent reasons.[11] First, Incline argues that the certificate of coverage issued to Jay's Transport was terminated for non-payment of premiums effective August 1, 2022. Incline's Mem. 10. Second, Incline contends that the Ford Ranger that Kennedy-Fonseca was driving at the time of the accident is not a "covered auto" for purposes of the policy. *Id.* at 12-13. Plaintiffs dispute whether the certificate to Jay's Transport was effectively terminated before the accident. Pls.' Incline Mem. 17-21. And Plaintiffs submit that Kennedy-Fonseca is entitled to UM/UIM coverage under the policy and as a matter of Connecticut public policy. *Id.* at 21-30.

**1. Relevant Policy Provisions**

The Incline policy defines "Tennessee Uninsured Motorists Coverage"[12] as follows:

> B. Who Is An Insured
>
> If the Named Insured is designated in the Declarations as:
>
> 1. An individual, then the following are "insureds":
>
> > a. The Named Insured and any "family members".
> >
> > b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> >
> > c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

[11] In its opening brief, Incline contended that the issue of whether the certificate of coverage was properly terminated is governed by federal rather than Connecticut law. Incline's Mem. 11. After recognizing that Mid-South is not a risk retention group, Incline explicitly withdrew this argument. Tr. 34.

[12] As Incline's counsel observed at oral argument, these provisions are identical to the Connecticut UM/UIM coverage definition in the Nationwide policy. Tr. 36; Nationwide Pol. 61.

> a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> c. The Named Insured for "property damage" only.

Incline Pol. 27-28.

The liability section of the Incline policy defines an "insured" as follows:

> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> > (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
> >
> > (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
> >
> > (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
> >
> > (4) Another other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
> >
> > (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

*Id.* at 12-13.

The Incline policy includes a section captioned "Schedule of Coverages and Covered Autos." Incline Pol. 4. This section includes the symbol "7" next to the column for liability

and uninsured motorists coverage. *Id.* The symbol "7" signifies that the policy covers "specifically described 'autos.'" *Id.* at 11. "Specifically described autos" is defined as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." *Id.* Item Three of the Declarations incorporates by reference the "Schedule on File with Insurance Company." *Id.* at 5. And the Certificate of Insurance issued by Mid-South to Jay's Transport lists only the 2014 Freightliner. Jay's Cov. Cert. 1.

**2. UM/UIM Coverage Under the Incline Policy**

I need not resolve whether the certificate of coverage issued to Jay's was terminated before August 18, 2022 because I conclude as a matter of law that Kennedy-Fonseca was not entitled to UM/UIM coverage for the accident.

First, I am not persuaded by Plaintiffs' argument that the Incline policy supplies an ambiguous definition of UM/UIM coverage. *See* Pls.' Incline Mem. 22-24. Plaintiffs contend that the UM/UIM coverage endorsement is ambiguous because it fails to define "covered auto" within the UM/UIM endorsement. *Id.* at 23. But the definition of "covered 'auto'" is supplied by the provision captioned "Schedule of Coverages and Covered Autos." Incline Pol. 4. An endorsement is not ambiguous where it incorporates by reference a term of art that is clearly defined elsewhere within the policy. For similar reasons, I conclude that the UM/UIM coverage endorsement adequately defined "Autos You Own." Although the Incline policy does not specifically list every auto owned by subscribers to the policy, the certificate of coverage

issued by Mid-South to Jay's Transport did list the vehicle owned by Jay's Transport: the 2014 Freightliner. Jay's Cov. Cert. 1.[13]

Second, I reject Plaintiffs' argument that Kennedy-Fonseca was a named insured under the Certificate of Coverage issued to Jay's Transport LLC. Pls.' Incline Mem. 22. I understand Plaintiffs to suggest that where, as here, the named insured is an LLC that has a single member, Kennedy-Fonseca is also the named insured. *See* Tr. 49. But Plaintiffs point to no authority in support of this argument. Indeed, Connecticut courts have repeatedly rejected efforts to apply the definition of UM/UIM coverage applicable to individuals where the named insured is an LLC. *See Collins v. Progressive Nw. Ins. Co.*, No. HHDCV146050583, 2015 WL 7421571, at *3 (Conn. Super. Ct. Oct. 27, 2015) (concluding that the plaintiff was not a named insured for purposes of UM/UIM coverage because the named insured under the commercial auto policy was an LLC partially owned by plaintiff); *Luciani v. Travelers Cas. Ins. Co. of Am.*, No. CV156052072, 2016 WL 7443925, at *1-3 (Conn. Super. Ct. Nov. 15, 2016) (rejecting plaintiff's argument that she was a named insured under commercial auto liability policy issued to her husband's business); *cf. Grandpre v. Am. Mod. Home Ins. Co.*, No. LLI-CV-226030059-S, 2023 WL 4573052, at *5 (Conn. Super. Ct. July 10, 2023) (applying the definition of "insured" for individuals because there, unlike in *Luciani* and *Collins*, the named insured under the commercial auto policy was an individual, not a corporate entity).

Because Jay's Transport is an LLC, UM/UIM coverage is available under the terms of the policy only to an individual occupying a covered "auto." Nationwide Pol. 27. In the

---

[13] Mid-South issued certificates of coverage to more than 1,000 independent truckers. Vollmer Aff. ¶ 18, ECF No. 58-5.

"Schedule of Coverages and Covered Autos," the Incline policy includes the symbol "7" next to the column for uninsured motorist coverage. *Id.* at 4. As noted, the symbol "7" signifies that the policy covers "specifically described 'autos,'" which are defined as, "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." *Id.* Item Three of the Declarations incorporates by reference the "Schedule on File with Insurance Company." *Id.* at 5. And the certificate of coverage issued by Mid-South to Jay's Transport lists only the 2014 Freightliner. Jay's Cov. Cert. 1. Coverage would therefore be available only if Kennedy-Fonseca were occupying the 2014 Freightliner at the time of the accident. Because the Ford Ranger driven by Kennedy-Fonseca on August 18, 2022 was not a covered auto, UM/UIM coverage is not available under the terms of the Incline policy.

**3. Public Policy**

Plaintiffs object that withholding UM/UIM coverage from Kennedy-Fonseca violates Connecticut public policy. Pls.' Incline Mem. 22-31. I do not agree.

Plaintiffs' first argument is that the Incline policy violates public policy insofar as it withholds UM/UIM coverage from an individual otherwise eligible for liability coverage. But Kennedy-Fonseca is not entitled to liability coverage under the Incline policy while driving the Ford Ranger. The Incline policy's liability endorsement provides that where, as here, the named insured is an LLC, coverage exists with respect to "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." Incline Pol. 12. Covered "auto" for purposes of liability coverage is defined using the symbol "7," *id.* at 4, which means that covered "auto" refers to "[o]nly those 'autos' described in Item Three of the Declarations for

which a premium charge is shown . . ." *Id*. at 11. Since the only vehicle listed in the Declarations is the 2014 Freightliner, Kennedy-Fonseca was not entitled to liability coverage under the Incline policy while driving the Ford Ranger. Because Kennedy-Fonseca was not entitled to liability coverage, the policy does not withhold UM/UIM coverage from an individual otherwise eligible for liability coverage in violation of Connecticut public policy.

Plaintiffs nonetheless observe that Kennedy-Fonseca would have been entitled to liability coverage under certain circumstances not present here. Pls.' Incline Mem. 22. Plaintiffs note that Incline's corporate representative conceded at his deposition that Kennedy-Fonseca likely would be entitled to liability coverage if Kennedy-Fonseca had gotten into an accident while driving the 2014 Freightliner to a carwash. Vollmer Dep. 17, ECF No. 78-12. Plaintiffs argue that construing the Incline policy to exclude UM/UIM coverage violates Connecticut public policy because public policy does not permit Nationwide to make UM/UIM coverage contingent on Kennedy-Fonseca's use of a specifically defined vehicle. Pls.' Incline Mem. 25-30.

In support of their argument, Plaintiffs rely on the Connecticut Supreme Court's decision in *Gormbard v. Zurich Insurance Co.*, 904 A.2d 198 (Conn. 2006). There, the court analyzed whether the plaintiff could claim uninsured motorist coverage under an auto policy that the plaintiff and her husband purchased for an antique vehicle. The policy defined "insured" as "you or any family member while occupying your covered auto," and restricted "covered autos" to a 1929 Model A antique vehicle. *Id.* at 200. The plaintiff and her husband also subscribed to another automobile liability insurance policy that covered the family's three other vehicles, including a 1987 Chevrolet Blazer. *Id.* The plaintiff was driving the Blazer when she was struck from behind and injured by an underinsured driver. *Id.* After exhausting

the limits of the liability policy that covered the Blazer, the plaintiff claimed UM/UIM coverage under the policy covering the Model A. Although the plaintiff was not occupying the Model A at the time of the accident, the court observed "as a general matter" that an insured may not "tie uninsured motorist benefits to the use of a specific vehicle" *id.* at 202, and "uninsured motorist coverage shall be portable," *id.* at 209.[14] However, the court nonetheless declined to require uninsured motorist coverage because it concluded that the public policy embodied in Connecticut's uninsured motorist statute did not extend to specialty policies for antique vehicles. *Id.* at 209-10.

The circumstances in *Gormbard* differ from the present case. In *Gormbard*, the plaintiff and her husband purchased the policy and would have been "insured" for both liability and uninsured motorist coverage purposes but for the policy's provision restricting coverage to a specific vehicle. Here, in contrast, the policy was not issued to an individual but rather is a commercial auto policy issued to Mid-South, with the certificate of insurance issued to Jay's Transport LLC. Even if the vehicle limitation is stripped from the definition of "insured," Kennedy-Fonseca would still not be an "insured" for liability or UM/UIM purposes under the policy.

---

[14] The *Gormbard* court distinguished *Quinn*, where the claimant was a relative of the named insured and owned his own vehicle. The *Gormbard* court reasoned: "As we have explained, however, in *Quinn*, the automobile liability insurance policy at issue did not limit uninsured motorist benefits in any impermissible way with respect to any of the class of insureds; as to *them*, the coverage was fully portable. The only issue in *Quinn* was whether Middlesex lawfully could refuse to extend coverage to resident family members who owned their own vehicles. We concluded not only that Middlesex could deny coverage to such family members, but also that doing so *furthered* the important public policy goals of the uninsured motorist statute." *Gormbard*, 904 A.2d at 207 (citing *Quinn*, 622 A.2d at 575).

Plaintiffs have pointed to no case where a court has held that the concept of person-oriented protection under Connecticut's uninsured motorist statute requires UM/UIM coverage for an individual where a commercial auto policy is issued to a business and the individual is not an "insured" even after the provision limiting coverage to a specific vehicle is excised. The Connecticut Superior Court considered an argument similar to the one presented by Plaintiffs here in *Luciani v. Travelers Casualty Insurance Co. of America*, No. CV156052072, 2016 WL 7443925 (Conn. Super. Ct. Nov. 15, 2016). There, the plaintiff argued that public policy required UM/UIM coverage because "she was an 'insured' for at least some purposes" according to the commercial auto policy's definition of liability coverage. *Id.* at *2. The Superior Court explicitly rejected that argument. The court observed that the policy at issue was "a commercial automobile insurance policy issued to a limited liability company conducting a painting business" and the "[t]he reasoning applicable to personal insurance policies like that at issue in *Harvey* is not necessarily applicable to commercial policies issued to business corporations." *Luciani*, 2016 WL 7443925, at *3 (citing *Harvey v. Travelers Indemnity Co.*, 449 A.2d 157, 159 (Conn. 1982)). The court concluded that "[i]t would not be unreasonable for an insurer issuing an automobile insurance policy to a commercial business to expect that it would be liable only for injuries suffered by persons using or occupying automobiles covered under the policy" and "[u]nder these circumstances, the unambiguous terms of the Policy at issue here do not violate the purpose of the controlling statute." *Id.*

Similarly, in *Collins v. Progressive Northwestern Insurance Co.*, No. HHDCV146050583, 2015 WL 7421571, at *4 (Conn. Super. Ct. Oct. 27, 2015), the Connecticut Superior Court declined to require UM/UIM coverage where the plaintiff was in a vehicle at the time of the accident that was not specified in a commercial auto policy issued

to an LLC in which he was a 50 percent owner. Distinguishing *Harvey*, the court observed that "the policy purchased by BBQTHIS, LLC is a commercial auto policy in which the determination of who is an insured person for purposes of both liability coverage and uninsured/underinsured benefits is defined, pursuant to the policy, by the vehicles themselves." *Collins*, 2015 WL 7421571, at *3. The court concluded that it could not "find that terms to which the plaintiff agreed, i.e. that coverage for drivers in his company under this commercial auto policy would be limited and defined by the vehicles listed in the policy, are a violation of public policy." *Id.*

I agree with the reasoning of the *Luciani* and *Collins* courts. Public policy does not prohibit Incline from withholding UM/UIM coverage where, in the circumstances of this accident, the claimant would not be entitled to liability coverage, the policy is a commercial auto policy issued to a business, and the claimant would not be an insured even if the provision limiting coverage to a particular vehicle were excised. As a result, I cannot say that public policy requires Incline to afford UM/UIM coverage to Kennedy-Fonseca when he is driving a vehicle other than the 2014 Freightliner.

In sum, I conclude that Connecticut public policy does not preclude Incline from withholding UM/UIM coverage under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, Nationwide's Motion for Summary Judgment (ECF No. 55) is DENIED. Incline's Motion for Summary Judgment (ECF No. 58) is GRANTED. The Clerk is respectfully directed to terminate Incline from the action.

On or before October 23, 2026, Plaintiffs and Nationwide shall confer and file a joint notice that (1) states whether the parties seek to take additional discovery before the filing of

Plaintiffs' motion for summary judgment, (2) proposes deadlines for Plaintiffs' motion for summary judgment and further discovery, if applicable, and (3) states whether there is agreement to seek a referral to a United States Magistrate Judge for purposes of conducting a settlement conference.

**SO ORDERED.**

New Haven, Connecticut
September 18, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge